IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
06/26/2014

```
                                 )
IN RE                            )
                                 )
HOT-HED, INC.,                   )   CASE NO. 11-35208-H3-7
                                 )
          Debtor,                )
                                 )
```

MEMORANDUM OPINION

Following an evidentiary hearing on the "Joint
Emergency Motion for In Camera Review of Allegedly Privileged
Documents," (Docket No. 195) filed by William G. West, Trustee,
and SafeHouse Habitats (Scotland), Ltd. ("SafeHouse"), the court
has conducted a review, in camera, of seven audio recordings and
two emails designated by the parties, pursuant to the "Agreed
Order Regarding Emergency Motion to Quash 2004 Subpoenas and for
Protection and Objection to the Trustee's 2004 Subpoena" (Docket
No. 176).  The following are the Findings of Fact and Conclusions
of Law of the court.  A separate conforming Judgment will be
entered.  To the extent any of the Findings of Fact are
considered Conclusions of Law, they are adopted as such.  To the
extent any of the Conclusions of Law are considered Findings of
Fact, they are adopted as such.

Findings of Fact

Hot-Hed, Inc. ("Debtor") filed a voluntary petition
under Chapter 7 of the Bankruptcy Code on June 16, 2011.  William

G. West ("Trustee") is the Chapter 7 Trustee.

Trustee filed Adv. No. 13-3107 against Louis Jasper
Wardlaw Posey ("Wardlaw"), Hot-Hed International, S.A. ("HHI"),
Cinaruco International, S.A. ("Cinaruco"), WAHA, S.A. ("WAHA"),
Hot-Hed International S.A. Egypt, PT Hot-Hed Indonesia, Hot-Hed
International Libya S.A., Hot-Hed Nigeria Ltd., Rawabi Hot-Hed
Co. Ltd., and HH SA, asserting generally that a) Wardlaw
structured the business such that Debtor's profits were diverted
to HHI; b) Wardlaw diverted the proceeds of the suit against BMP
first from Debtor to Cinaruco, and then on to WAHA; c) various
affiliates are holding Debtor's inventory without having paid
Debtor for it; d) Wardlaw should be individually liable for any
amount due for any defendants on an alter ego theory.

Trustee and SafeHouse Habitats (Scotland), Ltd.
("SafeHouse") noticed the Bankruptcy Rule 2004 examinations of
Karyn Andersen, who previously worked for Samer Al-Azem ("Al-
Azem") as a paralegal, and her husband, Bo Andersen.  Wardlaw,
HHI, and WAHA filed a motion to quash the notices of Bankruptcy
Rule 2004 examination.  (Docket No. 163, supplemented at Docket
No. 167).  Al-Azem filed an objection to the notices of
Bankruptcy Rule 2004 examination.  (Docket No. 164).  Al-Azem
testified that he has been counsel for Wardlaw, Hot Hed Oil Tool
Del Norte, S.A. de C.V., Hot Hed International Ltd., Lance
Patillo, and Hot Hed International Ltd. Bahamas.  He testified

2

that he is presently counsel for HHI, PT Hot Hed Indonesia, WAHA, and Wardlaw.

The motion to quash filed by Wardlaw, HHI, and WAHA was set for an evidentiary hearing. At the hearing, Trustee, SafeHouse, HHI, WAHA, Wardlaw, the Andersens, and Al-Azem presented a proposed Agreed Order. The court entered the Agreed Order on December 3, 2013. (Docket No. 176).

The Agreed Order provided in part that the Andersens were to produce all documents responsive to the notices of Bankruptcy Rule 2004 examination to W. Steven Bryant, counsel for Al-Azem and Samer Al-Azem P.C. d/b/a The Azem Firm. Bryant was to review the documents "for the sole purpose of determining which of the Documents may be subject to the attorney-client privilege, work-product or other privilege, or constitute confidential or proprietary information" of any client of Al-Azem or the Azem Law Firm. Bryant was to turn over to Trustee all documents not identified as privileged.[1] As to those documents Bryant identified as privileged, Bryant was to provide a privilege log identifying, for each disputed document, its length, date, brief description, author and recipients, name of the party asserting privilege, and basis for the claim of

---

[1]The Agreed Order also calls for a further review by Trustee. There is a separate dispute regarding Trustee's review and turnover of documents to SafeHouse. That dispute is not addressed in this Memorandum Opinion.

privilege.  Any disputes regarding challenges to documents asserted by Al-Azem to be privileged were to be presented to the court for review in camera.  (Docket No. 176).  Trustee and SafeHouse timely filed a motion for such review in camera. (Docket No. 195).

The court held an evidentiary hearing on the motion for review in camera.  At the hearing, Al-Azem testified regarding each of the disputed documents.  The parties have reduced the number of disputed documents to nine.  They consist of seven audio recordings and two emails.  At the conclusion of the hearing, the court determined to review the documents in camera, with respect to Al-Azem's assertions of privilege.[2]

W. Steven Bryant, the counsel for Samer Al-Azem ("Al-Azem") and Samer Al-Azem P.C. d/b/a The Azem Firm, presented the audio recordings and emails to the court as exhibits at the hearing on the motion for review in camera.

Al-Azem testified that all of the disputed documents come from Al-Azem's servers.  He testified that he recorded the conversations as a substitute for taking notes on his conversations with Wardlaw and Lance Patillo.  He testified that, in the conversations, he was providing legal advice to the other

---

[2]Al-Azem's amended privilege log asserts attorney-client privilege as to each of the remaining documents.  The amended privilege log does not assert work product privilege as to any of the remaining documents.  (Trustee's Exhibit 3).

4

persons on the recording.

Al-Azem Exhibit I

Al-Azem Exhibit I is an audio recording, 34:20 in length.[3]  Al-Azem's amended privilege log asserts privilege on behalf of Louis Wardlaw, HH Oil Tools, and Hot Hed Int'l Ltd.[4]  Al-Azem's description of the audio recording states that it is a conversation between Al-Azem and Wardlaw on May 2, 2011:  "Re: various business matters concerning HH Oil Tools and Hot-Hed Int'l Ltd. and how the bankruptcy filing of Hot-Hed, Inc. would affect those entities' interests."  (Trustee's Exhibit 3).

Al-Azem testified that, in the conversation at Al-Azem Exhibit I, he was acting as the attorney for Hot Hed Oil Tools and Hot Hed International Ltd.  He testified that the conversations concerned facts communicated to him by Wardlaw and Patillo because they wanted legal advice.  He testified that no one besides Al-Azem, Wardlaw, and Patillo participated in the conversations.  He testified that no one else was authorized to listen to them, but he assumes Karyn Andersen did.  He testified

---

[3]In this opinion, the times identified are in minutes and seconds.  Thus, for example, where the court has identified below a segment running from the beginning through "3:01," that segment of the audio recording ends three minutes and one second after the beginning of the audio segment.

[4]The entities as to which Al-Azem asserts privilege on behalf of his current or former clients are not identified precisely.  He testified he did not have engagement letters with these entities.

that Wardlaw and Patillo did not communicate facts to him in
order to commit a crime, or tort.  He testified that Wardlaw and
Patillo want him to keep the contents of those conversations
confidential.  He testified that Hot Hed International Ltd. and
HH Oil Tools want him to keep the contents of the conversations
confidential.  He testified that Wardlaw, Patillo, Hot Hed
International Ltd. and HH Oil Tools have not waived the
privilege.  Al-Azem's testimony was conclusory in nature, and did
not address any background facts.

      The court has reviewed Al-Azem Exhibit I.  The
discussion between Al-Azem and Wardlaw in Al-Azem Exhibit I
includes eight topics.  As to the first topic of conversation,
which runs from the beginning through 3:01, the communication
appears to be for the purpose of securing legal advice, but not
as to any of the parties on whose behalf Al-Azem asserts
privilege.  As to the second topic of conversation, which runs
from 3:02 through 6:23, the communication does not appears to be
for the purpose of securing a legal opinion.  As to the third
topic of conversation, which runs from 6:24 through 14:26, the
communication appears to be for the purpose of obtaining legal
advice and also contains Al-Azem's legal advice to one or more of
the entities asserting privilege.  As to the fourth topic of
conversation, which runs from 14:27 through 16:29, the
communication does not appear to be for the primary purpose of

securing legal advice.  As to the fifth topic of conversation, which runs from 16:30 through 22:57, the communication does not appear to be either the provision of legal advice or for the purpose of obtaining legal advice.  As to the sixth topic of conversation, which runs from 22:58 through 23:56. the communication does not appear to be either the provision of legal advice or for the purpose of obtaining legal advice as to any of the entities on whose behalf Al-Azem asserts privilege.  As to the seventh topic of conversation, which runs from 23:57 through 26:51, the communication appears to be for the purpose of securing legal advice.  As to the eighth topic of conversation, running from 26:52 through the conclusion, the communication appears to include the provision of legal advice.

<u>Al-Azem Exhibit J</u>

Al-Azem Exhibit J is an audio recording, 36:08 in length.  Al-Azem's amended privilege log asserts privilege on behalf of Patillo.  Al-Azem's description of the audio recording states that it is a conversation between Al-Azem and Patillo on May 9, 2011: "Re: the organization of a Delaware entity to act as an affiliate of Hot-Hed Int'l Ltd. and the general impact of bankruptcy law on such matters."  (Trustee's Exhibit 3).

Al-Azem testified that, in the conversation at Al-Azem Exhibit J, he was acting as the attorney for Patillo.  He testified that he began representing Patillo at the time Hot Hed

7

Oil Tools was being formed in 2011.  He testified that the
conversations were regarding Wardlaw's and Patillo's personal
affairs, because of SafeHouse's prior actions attempting to
pierce the corporate veil.  He testified that the communication
at Al-Azem Exhibit J was regarding the general impact of
bankruptcy, because he was negotiating with SafeHouse and Alford
Safety Systems, Inc. for a global settlement to avoid having to
file bankruptcy.

      The court has reviewed Al-Azem Exhibit J.  The
discussion between Al-Azem and Patillo in Al-Azem Exhibit J
includes five topics of conversation.  As to the first topic of
conversation, which runs from the beginning through 16:41, the
communication does not appear to be for the provision of legal
advice or the securing of legal advice.  As to the second topic
of conversation, which runs from 16:42 through 18:45, the
communication does not appear to be for the provision of legal
advice to Patillo.  As to the third topic of conversation, which
runs from 18:46 through 20:36, the communication does not appear
to be for the provision of legal advice or the securing of legal
advice.  As to the fourth topic of conversation, which runs from
20:37 through 25:55, the communication does not appear to be for
the securing of legal advice or the provision of legal advice to
Patillo.  As to the fifth topic of conversation, which runs from
25:56 through the conclusion, the communication does not appear

to be for the securing of legal advice or the provision of legal
advice to Patillo.

Al-Azem Exhibit K

Al-Azem Exhibit K is an audio recording, 31:54 in
length.  Al-Azem's amended privilege log asserts privilege on
behalf of Wardlaw.  Al-Azem's description of the audio recording
states that it is a conversation between Al-Azem and Wardlaw on
May 13, 2011:  "Re: infringement of individual patents and impact
of bankruptcy law on patent infringment."  (Trustee's Exhibit 3).

Al-Azem testified that the communication at Al-Azem
Exhibit K was regarding the general impact of bankruptcy, because
he was negotiating with SafeHouse and Alford Safety Systems, Inc.
for a global settlement to avoid having to file bankruptcy.

The court has reviewed Al-Azem Exhibit K.  The
discussion between Al-Azem and Wardlaw in Al-Azem Exhibit K
includes six topics of conversation.  As to the first topic of
conversation, which runs from the beginning through 8:03, the
communication does not appear to be for the securing of legal
advice or provision of legal advice to Wardlaw.  As to the second
topic of conversation, which runs from 8:04 through 13:58, the
communication does not appear to be for the securing of, or the
the provision of, legal advice to Wardlaw.  As to the third topic
of conversation, which runs from 13:59 through 15:38, it is not
clear that the communication is for the securing of, or the

9

provision of, legal advice to Wardlaw.  As to the fourth topic of
conversation, which runs from 15:39 through 16:43, the
communication does not appear to be for the securing of legal
advice.  As to the fifth topic of conversation, which runs from
16:44 through 22:05, the communication does not appear to be for
the provision of legal advice.  As to the sixth topic of
conversation which runs from 22:06 through the conclusion, the
communication does not appear to be for the securing of, or the
provision of, legal advice to Wardlaw.

<u>Al-Azem Exhibit L</u>

Al-Azem Exhibit L is an audio recording, 12:16 in
length.  Al-Azem's amended privilege log asserts privilege on
behalf of Wardlaw.  Al-Azem's description of the audio recording
states that it is a conversation between Al-Azem and Wardlaw on
June 14, 2011:  "Re: foreign patent matters, homestead laws, and
individual bankruptcy-law advice" (Trustee's Exhibit 3).

Al-Azem testified that the communication at Al-Azem
Exhibit L concerned individual bankruptcy advice to Wardlaw.

The court has reviewed Al-Azem Exhibit L.  The
discussion between Al-Azem and Wardlaw in Al-Azem Exhibit L
includes three topics of conversation.  As to the first topic of
conversation, which runs from the beginning through 3:08, the
communication does not appear to be for the purpose of securing,
or the provision of, legal advice to Wardlaw.  As to the second

topic of conversation, which runs from 3:09 through 6:45, it is not clear that the communication is for the purpose of securing, or the provision of, legal advice to Wardlaw.  As to the third topic of conversation, which runs from 6:46 through the conclusion, the communication appears to be for the purpose of the provision of legal advice to Wardlaw, individually.

<u>Al-Azem Exhibit M</u>

Al-Azem Exhibit M is an audio recording, 13:02 in length.  Al-Azem's amended privilege log asserts privilege on behalf of Wardlaw.  Al-Azem's description of the audio recording states that it is a conversation between Al-Azem and Wardlaw on June 17, 2011:  "Re: legal advice concerning a Delaware entity and the effects of filing a suggestion of bankruptcy" (Trustee's Exhibit 3).

Al-Azem testified that the conversation at Al-Azem Exhibit M concerned Hot Hed Oil Tools.  He testified that he relayed to Wardlaw what he had learned from Debtor's bankruptcy attorney, as to how Debtor's bankruptcy would affect Wardlaw, personally.

The court has reviewed Al-Azem Exhibit M.  The discussion between Al-Azem and Wardlaw in Al-Azem Exhibit M includes four topics of conversation.  As to the first topic of conversation, which runs from the beginning through 3:01, it is not clear that the communication is for the purpose of securing,

or the provision of, legal advice to Wardlaw.  As to the second
topic of conversation, which runs from 3:02 through 9:32, the
communication appears to be for the purpose of providing legal
advice to Wardlaw, individually.  As to the third topic of
conversation, which runs from 9:33 through 10:54, it is not clear
that the communication is for the provision of legal advice to
Wardlaw.  As to the fourth topic of conversation, which runs from
10:55 through the conclusion, the communication does not appear
to be for the purpose of securing, or the provision of, legal
advice to Wardlaw.

<u>Al-Azem Exhibit N</u>

Al-Azem Exhibit N is an audio recording, 26:38 in
length.  Al-Azem's amended privilege log asserts privilege on
behalf of Wardlaw.  Al-Azem's description of the audio recording
states that it is a conversation between Al-Azem and Wardlaw on
May 19, 2011:  "Re: Hot Hed Int'l Ltd. and its affiliates, patent
infringement, alter-ego theories and the effects of a bankruptcy
filing on such matters" (Trustee's Exhibit 3).

The court has reviewed Al-Azem Exhibit N.  The
discussion between Al-Azem and Wardlaw in Al-Azem Exhibit N
includes seven topics of conversation.  As to the first topic of
conversation, which runs from the beginning through 2:38, the
communication appears to be for the purpose of securing, and the
provision of, legal advice to Wardlaw.  As to the second topic of

12

conversation, which runs from 2:39 through 6:24, the communication appears to be for the purpose of securing, and the provision of, legal advice to Wardlaw.  As to the third topic of conversation, which runs from 6:25 through 10:21, the communication does not appear to be for the securing of, or the provision of, legal advice to Wardlaw, individually.  As to the fourth topic of conversation, which runs from 10:22 through 13:07, the communication appears to be for the purpose of provision of legal advice to Wardlaw, individually.  As to the fifth topic of conversation, which runs from 13:08 through 17:46, it is not clear that the communication is for the purpose of securing, or the provision of, legal services to Wardlaw, individually.  As to the sixth topic of conversation, which runs from 17:47 through 19:28, the communication appears to be for the purpose of providing legal advice to Wardlaw, invididually.  As to the seventh topic of conversation, which runs from 19:29 through the conclusion, the communication does not appear to be for the purpose of securing, or the provision of, legal advice to Wardlaw, individually.

<u>Al-Azem Exhibit O</u>

Al-Azem Exhibit O is an audio recording, 11:21 in length.  Al-Azem's amended privilege log asserts privilege on behalf of Wardlaw.  Al-Azem's description of the audio recording states that it is a conversation between Al-Azem and Wardlaw on

13

June 20, 2011:  "Re: the dissolution of a Delaware entity and
effect of bankruptcy filings" (Trustee's Exhibit 3).

        The court has reviewed Al-Azem Exhibit O.  The
discussion between Al-Azem and Wardlaw in Al-Azem Exhibit O
includes five topics of conversation.  As to the first topic of
conversation, which runs from the beginning through 3:50, the
communication appears to be for the purpose of securing legal
advice for Wardlaw, individually.  As to the second topic of
conversation, which runs from 3:51 through 4:58, the
communication does not appear to be for the provision of legal
advice.  As to the third topic of conversation, which runs from
4:59 through 6:19, the communication appears to be for the
provision of legal advice to Wardlaw.  As to the fourth topic of
conversation, which runs from 6:20 through 9:19, the
communication does not appear to be for the purpose of securing,
or the provision of, legal advice to Wardlaw, individually.  As
to the fifth topic of conversation, which runs from 9:20 through
the conclusion, it is not clear that the communication is for the
purpose of securing, or the provision of, legal advice to
Wardlaw.

### Al-Azem Exhibit P

        Al-Azem Exhibit P is an email, dated June 10, 2011,
from Al-Azem to Juan A. Tejada Mora ("Tejada") and Wardlaw, with
copies to Al-Azem, Patillo, and Rosalin Rigueros.  Al-Azem's

amended privilege log asserts privilege on behalf of Hot Hed
International Ltd. Bahamas.  (Trustee's Exhibit 3).

Al-Azem's amended privilege log describes "E-mail
regarding Hot Hed Int'l Ltd. Bahamas' resolutions changing the
composition of the Debtor's Board of Directors."

Al-Azem testified that Tejada is an attorney in Panama
who set up Hot Hed International Ltd. Bahamas.  He testified that
Rosalin Rigueros is Tejada's assistant.  He testified that the
email concerned facts communicated to Al-Azem and Tejada by Hot
Hed Bahamas' directors because they wanted legal advice from Al-
Azem and Tejada.  Al-Azem testified that no one other than Al-
Azem, Hot Hed Bahamas personnel, Tejada and Rigueros and Wardlaw
received the email.  He testified that the facts were not
communicated in order to commit a crime or tort.  He testified
that Hot Hed Bahamas wanted him to keep the email confidential.
He testified, in conclusory fashion, that no one at Hot Hed
Bahamas waived the privilege.  Al-Azem testified that he does not
know whether Patillo was an officer or director of Hot Hed
International Ltd. Bahamas.

The court has reviewed Al-Azem Exhibit P.  The email
appears to include communication for the purpose of providing
legal advice to Hot Hed International Ltd. Bahamas.

<u>Al-Azem Exhibit Q</u>

Al-Azem Exhibit Q is an email, dated May 27, 2011, from Al-Azem to Wardlaw and Patillo, with a copy to Karyn Andersen. Al-Azem's amended privilege log asserts privilege on behalf of Wardlaw.  (Trustee's Exhibit 3).

Al-Azem's amended privilege log describes "E-mail to Louis Wardlaw and Lance Patillo providing individual legal advice regarding their potential, personal liability in the face of a possible employment-litigation claim against Hot Hed, Inc."

Al-Azem testified that he sent the email at Al-Azem Exhibit Q to Patillo and Wardlaw, because he had received an email from Juan Tang, an accountant for Debtor.  He testified that the email from Tang appeared to be copied to someone who he believed to be an employment law attorney trying to support a claim for constructive discharge.  He testified that he wrote to Wardlaw and Patillo to provide legal advice on the perceived suit to be brought against them.

The court has reviewed Al-Azem Exhibit Q.  The email appears to include communication for the purpose of providing legal advice to Wardlaw.

<u>Conclusions of Law</u>

<u>Privilege</u>

Federal common law controls privileges asserted in the context of a Bankruptcy Rule 2004 examination.  <u>In re Royce</u>

16

Homes, L.P., 449 B.R. 708 (Bankr. S.D. Tex. 2011), citing In re
Asia Global Crossing, Ltd., 322 B.R. 247  (Bankr. S.D.N.Y. 2005).

The party invoking the privilege bears the burden of
proving that his or her communications are privileged and,
therefore, protected from disclosure.  In re Santa Fe Int'l
Corp., 272 F.3d 705 (5th Cir. 2001).  The party invoking the
privilege must prove each element of the definition of attorney-
client privileged communications, including confidentiality and
absence of waiver.  Royce Homes, 499 B.R., at 725.

The attorney-client privilege guards confidential
communications made by a client to his attorney from disclosure.
United States v. Neal, 27 F.3d 1035 (5th Cir. 1994).  It serves
to encourage full and frank communication between attorneys and
their clients and thereby promote broader public interests in the
observance of law and administration of justice.  The privilege
is premised on the attorney's need to know all that relates to
the client's reasons for seeking representation if the
professional mission is to be carried out.  Upjohn Co. v. United
States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

The Fifth Circuit has defined attorney-client
privileged communications as:  1) confidential communications; 2)
made to a lawyer or his subordinate; 3) for the primary purpose
of securing either a legal opinion or legal services, or
assistance in some legal proceeding.  United States v. Robinson,

121 F.3d 971 (5th Cir. 1997); <u>United States v. Pipkins</u>, 528 F.2d 559 (5th Cir.1976).

      Not all communications between a client and his or her attorney are protected by the attorney-client privilege. <u>Pipkins</u>, 528 F.2d, at 562-63. While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege. <u>Navigant Consulting, Inc. v. Wilkinson</u>, 220 F.R.D. 467 (N.D. Tex. 2004), <u>citing</u> <u>Fisher v. United States</u>, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).

      In the instant case, as addressed above, the communications in the third, seventh, and eighth topics of conversation in Al-Azem Exhibit I; the third topic of conversation in Al-Azem Exhibit L; the second topic of conversation in Al-Azem Exhibit M; the first, second, fourth, and sixth topics of conversation in Al-Azem Exhibit N; the first and third topics of conversation in Al-Azem Exhibit O; and Al-Azem Exhibits P and Q were all for the securing of, or the provision of, legal advice to the persons identified on Al-Azem's privilege log. The court concludes that Al-Azem's claim of privilege applies to those portions. With respect to the other portions the claimants asserting privilege have not met their burden of proof.

<u>Waiver</u>

Whether the claimant has waived the privilege is a fact-specific inquiry.  <u>Alpert v. Riley</u>, 267 F.R.D. 202 (S.D. Tex. 2010).  A party can waive the attorney-client privilege by voluntarily disclosing privileged communications or by inadvertently disclosing those communications to third parties. <u>Alldread v. City of Grenada</u>, 988 F.2d 1425 (5th Cir. 1993).

In the instant case, Al-Azem asserted a claim of privilege as to the email at Al-Azem Exhibit P on behalf of Hot Hed International Ltd. Bahamas.  The email was copied to Patillo, as to whom Al-Azem testified he does not know of an association with Hot Hed International Ltd. Bahamas.  The court concludes that the privilege has been waived as to the email at Al-Azem Exhibit P.

With respect to email at Al-Azem Exhibit Q, Al-Azem asserted a claim of privilege on behalf of Wardlaw.  The email was copied to Patillo.

The court notes that Al-Azem has asserted a joint privilege.  There is an exception to the general rule that disclosure waives the privilege.  Two types of communication are protected under the "common litigation interest" privilege:  (1) communications between co-defendants in actual litigation and their counsel and (2) communications between potential co-defendants and their counsel.  With respect to the latter

19

category, the term "potential" has not been clearly defined.
However, because the privilege is "an obstacle to truthseeking,"
it must "be construed narrowly to effectuate necessary
consultation between legal advisers and clients."  There must be
a palpable threat of litigation at the time of the communication,
rather than a mere awareness that one's questionable conduct
might some day result in litigation.  In re Santa Fe Intern.
Corp., 272 F.3d 705 (5th Cir. 2001).

        In the instant case, the communication at Al-Azem
Exhibit Q addressed solely Wardlaw's personal liability.  There
is nothing in it to connect it to Patillo, except Al-Azem's
directive to Patillo to implement Al-Azem's recommendation to
Wardlaw.  The court concludes that the privilege has been waived
as to the email at Al-Azem Exhibit Q.

        Based on the foregoing, a separate conforming Judgment
will be entered.

        Signed at Houston, Texas on June 26, 2014.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE